UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERTS-GORDON LLC,

                Plaintiff,

      v.

PEKTRON PLC,

                Defendant.

**DECISION AND ORDER**
13-CV-182S

## I. INTRODUCTION

Invoking  this Court's diversity jurisdiction, Roberts-Gordon LLC, with its principal place of business in Buffalo, New York, brings this breach-of-contract action against its fellow merchant, Pektron PLC, a corporation organized under the laws of the United Kingdom with its principal place of business in the U.K. Pektron now moves to dismiss this action for lack of personal jurisdiction. For the following reasons, that motion is denied.

## II. BACKGROUND

Roberts-Gordon manufactures commercial heating and air conditioning equipment in Buffalo, New York. In July 2008, Pektron, an electronics manufacturer with its factory and corporate offices in Derby, England, issued a quotation to Roberts-Gordon for the sale of ignition control units. In the beginning of September of that year, Roberts-Gordon, in response to the quote, issued a purchase order for the ignition units. This resulted in the first of many transactions. Over the course of their relationship, Roberts-Gordon bought "tens of thousands" of ignition units. (Potts Aff., ¶ 17; Docket No. 9-1.) The units were made in Derby, and picked up "FOB" in Derby by agents of Roberts-Gordon. In other words, Pektron was not responsible for the delivery of the goods; rather, Roberts-Gordon

-1-

was responsible for collecting them in Derby. (Id., ¶ 24.)

At some point in 2012, this apparently healthy business relationship turned sour. Roberts-Gordon now alleges that Pektron sold it defective ignition units and has "refused to honor its contractual obligations." (Compl., ¶ 11; Docket No. 1.) Instead, Pektron has "demanded that an outstanding invoice balance of $38,000 be paid by Plaintiff before [it] would even discuss making Plaintiff whole." (Id.)

Pektron now moves to dismiss the complaint, arguing that this Court lacks personal jurisdiction over it.

### III.  DISCUSSION

A United States district court may exercise personal jurisdiction over a defendant if the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A);  Spiegel v. Schulmann, 604 F.3d 72, 76 (2d Cir. 2010). Jurisdiction conferred by the state, however, is constrained by the Due Process Clause, which "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980); see also Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851-52 180 L. Ed. 2d 796 (2011) ("A state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause."). Thus, this Court can exercise jurisdiction over an out-of-state defendant provided that it is permitted by both New York State's statutes and the strictures of due process. See Burger King Corp. v.

Rudzewicz, 471 U.S. 462, 473, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

There are two types of personal jurisdiction: general and specific. Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 60 n.9 (2d Cir. 2012). "General jurisdiction is authorized where the defendant's 'affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State.'" Id. (quoting Goodyear, 131 S. Ct. at 2851). This type of jurisdiction is codified in New York under N.Y. C.P.L.R. § 301. Id.

"'Specific jurisdiction,' however, 'depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" Id. (quoting Goodyear, 131 S. Ct. at 2851). Jurisdiction of this type is permitted in New York under N.Y. C.P.L.R. § 302(a). Id.

At this stage of the proceedings, "[b]ecause the parties have not conducted discovery, a plaintiff may carry his burden by "pleading in good faith legally sufficient allegations of jurisdiction, i.e., by making a prima facie showing of jurisdiction." Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2nd Cir. 2001) (internal citations, quotations marks, and modifications omitted). "A plaintiff can make this showing through his own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." Id. "[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." Id.

***

Roberts-Gordon does not dispute that this Court lacks general jurisdiction over Pektron. It asserts, however, that under N.Y. C.P.L.R. § 302(a), New York's "long-arm"

statute, this Court does have specific personal jurisdiction. That statute, in relevant part, reads:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or **contracts anywhere to supply goods or services in the state**.

§ 302(a)(1) (emphasis added).

Pektron contends that because it played no part in shipping the goods into New York, it has not "suppl[ied] goods or services in the state." This Court cannot agree.

As Roberts-Gordon notes, the various purchase orders and invoices, which were produced during each of the parties' many transactions, made it clear that the ignition units were being shipped to New York. By way of example, an invoice and bill of lading from March of 2010 shows that units would be shipped to Roberts-Gordon at 1250 William St., Buffalo, New York. In fact, Pektron does not argue that it was unaware that the goods were destined for New York.[1] Rather, it argues that this knowledge is insufficient to establish personal jurisdiction.

But Judge Elfvin of this District has ably found that "if the [defendant] was aware that

---

[1] There is likewise no dispute that this suit arises out of Pektron's contacts (however substantial or insubstantial they may be) with the forum state. See Daimler AG v. Bauman, 134 S. Ct. 746, 748-49 (2014) (internal citations, quotation marks, and modifications omitted) (specific jurisdiction "encompasses cases in which the suit arises out of or relates to the defendant's contacts with the forum"). Indeed, the contract (or contracts) between the two parties acts as both the link to New York and the basis of this breach-of-contract suit.

New York was the ultimate destination of its computer chips when it contracted to manufacture them for Plaintiff, . . . it follows that [the defendant] contemplated delivery of its computer chips in New York. Within the meaning of subdivision 1 of CPLR § 302(a), [the defendant] thereby contracted to supply goods in New York." Columbus McKinnon Corp. v. China Semiconductor Co., Ltd., No. CIV-88-211E, 1989 WL 82455, at *4 (W.D.N.Y. July 19, 1989).

That reasoning is sound. C.P.L.R. § 302(a) does not draw a distinction, as Pektron contends, between goods "shipped" and goods "supplied." Here, Pektron sent a representative to New York at least once to meet with Roberts-Gordon, engaged in a lengthy business relationship with a New York company, and purposely manufactured goods for that company, all the while knowing that those goods – irrespective of who was responsible for shipping costs or shipping liability – would end up in New York State. For the purposes of New York's long-arm statute, it has thus supplied those goods in the state. Indeed, other courts in this district, and throughout the Second Circuit, have found similarly. See GB Mktg. USA Inc. v. Gerolsteiner Brunnen GmbH & Co., 782 F. Supp. 763, 767 (W.D.N.Y. 1991) (Larimer, J.) (rejecting argument that personal jurisdiction was lacking because defendant, Gerolsteiner, relinquished title and possession of the goods in Germany, and finding that "Gerolsteiner clearly knew that some of that water was bound for New York"); see also Eugene Iovine, Inc. v. Rudox Engine & Equip. Co., 786 F. Supp. 236, 241 (E.D.N.Y. 1992) (where defendant knew that goods "were destined for New York, [and] assisted in specially designing those sets and in procuring final approval of the contract . . . [the defendant] has supplied goods for New York pursuant to CPLR § 302(a)(1)"); Laumann Mfg. Corp. v. Castings USA, Inc., 913 F. Supp. 712, 717 (E.D.N.Y.

1996) ("This court does not believe that the New York State legislature intended to allow potential defendants to escape the reach of the Long–Arm statute by inserting out-of-New York State F.O.B. terms into their contracts."); Cavalier Label Co., Inc. v. Polytam, Ltd., 687 F. Supp. 872, 877 (S.D.N.Y. 1988) ("The amendment [creating § 302(a)] abrogated the 'mere shipment rule'. . . .").

Pektron relies on two New York Appellate Division cases from the Second Department that, it argues, find to the contrary. In SBR Realty Corp. v. Pave-Mark Corp., the more recent of the two, the court found that "knowledge that a product may be destined for a particular forum, in and of itself, is insufficient to sustain jurisdiction."175 A.D.2d 240, 241, 572 N.Y.S.2d 705 (2d Dep't 1991). The SBR court relied on an earlier Second Department case, Paradise Products Corp. v. Allmark Equipment Co., to support this proposition. 138 A.D.2d 470, 471, 526 N.Y.S.2d 119 (2d Dep't 1988). Despite the apparent relevance of this holding, for three reasons, this Court remains unpersuaded.

First, while this Court must give those decisions "proper regard," they are not binding on this Court. Travelers Ins. Co. v. 633 Third Associates, 14 F.3d 114, 119 (2d Cir. 1994).

Second, unlike the facts of this case, those cases each concerned a single transaction. In fact, the Paradise court, on which the SBR court exclusively relied, deemed this fact controlling. It reasoned that basing jurisdiction on a single transaction, where the defendant only "may" have known the product would end up in New York, did not comport with due process. 138 A.D.2d at 471.  It did not truly discuss § 302(a) or the import of the word "supply" as found in that section. Instead, it relied on due process principles, holding that "[i]t cannot be said that [the defendant's] conduct and connections with New York are such that it should reasonably have anticipated being haled into court here." Id.  "Nor can

-6-

it be said that [the defendant] purposefully availed itself of the privilege of conducting activities here," it concluded. Id. But those concerns are not as compelling here, where Pektron purposely engaged in multiple transactions totaling over $1 million in sales, with affirmative knowledge that the goods were destined for New York.

Finally, the Third Department of New York's Appellate Division has issued a ruling more relevant to the question before this Court. And, like this Court, the Third Department found it insignificant that the goods had not actually been "shipped" into the state.  In Anderson Dev. Corp. v. Isoreg Corp., the "[p]laintiff's purchase contract and defendant's sales order and bill of lading provided for shipment to New York," thus establishing defendant's knowledge that its equipment "was destined for New York." 154 A.D.2d 859, 860, 546 N.Y.S.2d 720, 721 (3rd Dep't 1989). The court found jurisdiction to be proper under C.P.L.R. § 302(a)(1), concluding, "Defendant  has not come forward with anything which indicates to us that the Legislature intended to give any jurisdictional import to [] delivery terms, and the 1979 amendment to CPLR [§] 302(a)(1), requiring only that defendant contract to supply goods in the State, whether actually shipped or not, would indicate to the contrary." Id.

Thus, this Court finds those cases identified by Pektron offer little probative value. Instead, based on the evidence currently before this Court and the clear weight of reasoned authority, Roberts-Gordon has met its burden demonstrating that this Court has personal jurisdiction over Pektron under § 302(a)(1).

****

Such a finding does not, however, necessarily end the matter. For personal jurisdiction over Pektron to be permissible, federal constitutional due process standards

must also be satisfied. See Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010) ("If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution.").

Pektron takes Roberts-Gordon to task for not providing a lengthy response to Pektron's argument that the exercise of jurisdiction here would offend the Due Process Clause. But this Court is not as troubled by Roberts-Gordon's response. Several courts, the Second Circuit included, have determined that once § 302 is satisfied, further inquiry is unnecessary. See D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 105 (2d Cir. 2006) ("[T]he constitutional requirements of personal jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302(a) meets due process requirements."); see also, e.g., Pieczenik v. Dyax Corp., 265 F.3d 1329, 1333 (Fed. Cir. 2001) (internal citation omitted) ("Because New York's long-arm statute does not reach to the limits of due process, the inquiry in this case is confined to whether a New York court would have jurisdiction. . . .").

But in any event, this Court finds that due process is satisfied independent of § 302(a).

There are two components to the due process analysis: (1) the minimum-contacts inquiry and (2) the reasonableness inquiry. See Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L., 264 F.3d 32, 37–38 (2d Cir. 2001).

As for the first component, "[t]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985). Indeed, "it is essential in each case that there be some act by which the defendant

purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)). As discussed above, considering the totality of the factors here – including Pektron's decision to contract with a New York company, doing roughly $1 million in business with that company, and knowing that the goods were destined to be used in a New York factory – it becomes evident that Pektron has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. (internal quotation marks omitted). Unlike simply placing a product in the stream of commerce, without more, Pektron purposefully targeted New York by contracting with a New York company. Cf. Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cnty., 480 U.S. 102, 112, 107 S. Ct. 1026, 1032, 94 L. Ed. 2d 92 (1987) (opinion of O'Connor, J.) (to satisfy due process, placing product in stream of commerce must be coupled with some act targeting the forum state); J. McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2788, 180 L. Ed. 2d 765 (2011) (plurality opinion) (same).

For the second component, "[e]ven  where an out-of-state defendant purposefully avails himself of the forum state, plaintiff[] must still demonstrate that the exercise of jurisdiction does not 'offend traditional notions of fair play and substantial justice' and is thus reasonable under the Due Process Clause." Chloé, 616 F.3d at 172–73 (quoting Asahi, 480 U.S. at 113).

The Supreme Court has identified five factors that must be considered when determining the reasonableness of a particular exercise of jurisdiction: (1) the burden on the defendant, (2) the interests of the forum State, (3) the plaintiff's interest in obtaining

relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies. Id. at 158 (citing Asahi, 480 U.S. at 113).

These factors are either neutral (1, 4, and 5) or weigh in Roberts-Gordon's favor (2 and 3). Although this Court "acknowledge[s] that there will be some burden on [Pektron] if [it] must travel to New York for trial[,] [t]he inconvenience . . . cuts both ways," as Roberts-Gordon would be burdened if it had to travel to the U.K. Id. Ultimately, based on the contacts described above, "it is consistent with the traditional notion of fair play that [Pektron] could have reasonably expected to be haled into a New York court." See Laumann, 913 F. Supp. at 718.

## IV. CONCLUSION

Pektron contracted with a New York company and supplied it with roughly $1 million in goods – goods that it knew were destined for New York. New York courts, and thus, this Court, therefore have personal jurisdiction over Pektron under N.Y. C.P.L.R. §302(a)(1). For similar reasons, the assertion of jurisdiction here does not offend the Due Process Clause.

**V. ORDERS**

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 9) is

DENIED.

SO ORDERED.

Dated:        February 13, 2014
                 Buffalo, New York


                                                    /s/William M. Skretny
                                                  WILLIAM M. SKRETNY
                                                       Chief Judge
                                              United States District Court